UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ABSOLUTE MARINE TOWING & SALVAGE, INC.,**

        **Plaintiff,**

-vs-                                                **Case No. 6:10-cv-1707-Orl-19DAB**

**UNIVERSAL STRATEGIC MANAGEMENT, INC. and JESS COOLEY,**

        **Defendants.**

_____

# ORDER

This case comes before the Court on the following:

1. Motion to Compel Arbitration and Stay Proceedings by Defendants Universal Strategic Management, Inc. and Jess Cooley (Doc. No. 13, filed Dec. 27, 2010); and

2. Response to Defendants' Motion to Compel Arbitration and Stay Proceedings by Plaintiff Absolute Marine Towing & Salvage, Inc. (Doc. No. 18, filed Jan. 20, 2011).

**Background**

**I. Plaintiff's Allegations**[1]

This case concerns the "M/V It's Happnin," ("the Vessel"), a catamaran that allegedly capsized and sank while in tow from the Bahamas to Melbourne, Florida. (Doc. No. 1 ¶¶ 8, 16, 19.) On or about April 28, 2010, Ronald C. Ryan, the owner of the Vessel, contracted with Plaintiff Absolute Marine Towing & Salvage, Inc. ("Absolute") to tow the Vessel from Treasure Cay,

---

[1] The facts presented here are derived from the allegations of the Complaint. These facts are included only to provide context and should not be construed as findings of fact.

Bahamas, to Melbourne, Florida ("Absolute Contract"). (*Id.* ¶¶ 8-9.) A copy of the Absolute Contract is attached to the Complaint as Exhibit "A." (Doc. No. 1-1.)

Absolute asserts that on or about May 3, 2010, it "entered into a verbal maritime contract with [Defendant Jess] Cooley," the President of Defendant Universal Strategic Management, Inc. ("Universal"), "for either Universal or Cooley to tow the [Vessel] from its position in Treasure Cay, Bahamas, to Melbourne, Florida" ("Universal Contract"). (Doc. No. 1 ¶ 10.) According to Absolute, the Vessel capsized and sank while Cooley towed it from the Bahamas to Florida. (*Id.* ¶ 19.) The Vessel allegedly sustained significant damage for which Absolute compensated Ryan. (*Id.* ¶ 22.)

## II. Procedural History

On November 17, 2010, Absolute filed a Complaint asserting two counts of "negligent breach of towage contract" against Universal and Cooley. (Doc. No. 1 at 5-10.) Universal and Cooley now move to compel arbitration and stay proceedings pending the completion of arbitration. (Doc. No. 13), and Absolute has filed a response in opposition. (Doc. No. 18.)

**Standard of Review**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs arbitration clauses in "maritime transactions," which include agreements relating to any matters within federal admiralty jurisdiction. 9 U.S.C. §§ 1-2. "Under the FAA, a written agreement to arbitrate is 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (quoting 9 U.S.C. § 2). "Accordingly, the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is

enforceable under ordinary state-law contract principles and (b) the claims before the court fall within the scope of that agreement." *Id.* (internal quotation omitted). "Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements." *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) (citing *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)).

"Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted." *Gregory v. Electro-Mech. Corp.*, 83 F.3d 382, 384 (11th Cir. 1996) (citations omitted)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Klay v. All Defendants*, 389 F.3d 1191, 1201 (11th Cir. 2004) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983)). At the same time, however, no party may be forced to arbitrate a claim that the party did not intend and agree to arbitrate. *Kemiron Atl. Inc. v. Aguakem Int'l, Inc.*, 290 F.3d 1287, 1290 (11th Cir. 2002); *see also Seaboard Coast Line R.R. v. Trailer Train Co.*, 690 F.2d 1343, 1352 (11th Cir. 1982) (noting that the federal policy favoring arbitration cannot serve to stretch a contract beyond the scope originally intended by the parties).

**Analysis**

Defendants do not contend that the oral Universal Contract requires arbitration of the claims asserted this case. Instead, Defendants seek to compel arbitration pursuant to the following provisions of the Absolute Contract between Absolute and Ryan:

> The undersigned agrees to indemnify and hold harmless the Towing Contractor, Boat U.S., and their agents, for any and all claims for bodily injury, property or environmental damage rising out of the work requested regardless of the cause. Disputes rising out of this agreement will be resolved by Arbitration in a mutually agreed upon domestic arbitration forum.

(Doc. No. 1-1 at 1.) The "undersigned" refers to Ryan, who is not a party to this case. (*Id.*) Neither Universal nor Cooley are mentioned anywhere in the Absolute Contract. (*Id.*)

Although Defendants are not named parties to the Absolute Contract, they contend that the Absolute Contract compels arbitration in this case because: (1) Defendants are third-party beneficiaries of the Absolute Contract as "agents" of Absolute; and (2) Absolute's factual allegations against Defendants arise out of the Absolute Contract. (Doc. No. 13 at 3-8.) Both of these arguments are without merit for the reasons discussed below, and there is no basis for compelling arbitration in this case.

**I. Defendants as Third-Party Beneficiaries to the Absolute Contract**

"Non-parties to a contract containing an arbitration clause cannot compel parties to a contract to arbitrate unless it is determined that they are a third party beneficiary to the contract." *Peters v. The Keyes Co.*, No. 10-12261, 2010 WL 4386721, at *3 (11th Cir. 2010) (quoting *Fla. Power & Light Co. v. Road Rock, Inc.*, 920 So. 2d 201, 203 (Fla. 4th DCA 2006)). A third party beneficiary exists "only if the parties to the contract clearly express, or the contract itself expresses, an intent to *primarily* and *directly* benefit the third party or a class of persons to which that party claims to belong." *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1031 (Fla. 4th DCA 1998) (emphasis added); *see also Blu-J, Inc. v. Kemper C.P.A. Group*, 916 F.2d 637, 640 (11th Cir. 1990) ("[I]t must be shown that the intent and purpose of the contracting parties was to confer a direct and substantial benefit upon the third party." (quotation omitted)). Persons who merely receive an "incidental or consequential benefit from the contract" cannot be third party beneficiaries. *Esposito v. True Color Enters. Const., Inc.*, 45 So. 3d 554, 555 (Fla. 4th DCA 2010).

Defendants argue that Absolute and Ryan contracted with the intent to primarily and directly benefit Defendants by stipulating that Ryan would indemnify and hold harmless Absolute's "agents" for the work requested. (Doc. No. 13 at 4-5.) Assuming without deciding that Defendants were "agents" of Absolute, there is no evidence of record that Defendants or "agents" generally were intended by Ryan and Absolute to primarily and directly benefit from the Absolute Contract, and thus Defendants are not third-party beneficiaries to the Absolute Contract. *Caretta Trucking*, 647 So. 2d at 1031.

The Absolute Contract bestowed *some* benefit on "agents" by indemnifying and holding them harmless from claims for damages by Ryan. (Doc. No. 1-1 at 1.) However, according to Kevin Miller, the President of Absolute who negotiated the Absolute Contract with Ryan, at no time during the negotiation or formation of the Absolute Contract did he discuss with Ryan that "any third parties," including Jess Cooley or Universal, would be involved in the transport of the Vessel. (Doc. No. 18-2 ¶¶ 3-5.) Finding no evidence of record contrary to the plain language of the Absolute Contract and the testimony of Miller, the Absolute Contract primarily and directly concerned the towing of the Vessel by Absolute, and the indemnification afforded to Absolute's "agents" was merely an incidental benefit. *See Esposito*, 45 So. 3d at 556 (holding that a subcontractor was an incidental, not a third-party, beneficiary because nothing in the contract itself suggested an intent to benefit the subcontractor and because subcontractors as a class were merely identified in the contract as "part of the allocation of responsibilities and risk" between the contracting parties); *cf. Fla. Power & Light Co. v. Mid-Valley, Inc.*, 763 F.2d 1316, 1331-32 (11th Cir. 1985) (finding that a third party could enforce a contract where the parties' pre-contract and post-contract dealings showed that both parties knew and intended that the third-party beneficiary

would be performing the bulk of work under the contract). Accordingly, Defendants have not shown themselves to be third-party beneficiaries of the Absolute Contract.

## II. Arbitration Limited to Disputes "Rising Out of" Absolute Contract

Even if Defendants were third-party beneficiaries of the Absolute Contract, Plaintiffs are not entitled to compel arbitration in this case because no dispute "rising out of" the Absolute Contract is presented under the facts alleged in this case. *See Lambert*, 544 F.3d at 1195 (requiring that the claims before the court fall within the scope of the arbitration agreement). The Absolute Contract provides that "[d]isputes rising out of this agreement will be resolved by Arbitration." (Doc. No. 1-1 at 1.) "Disputes that are not related – with at least some directness – to performance of duties specified by the contract do not count as disputes 'arising out of' the contract." *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001).

The Absolute Contract imposes a duty on Absolute, not Defendants, to tow the Vessel, and the Absolute Contract only requires arbitration of "disputes rising out of *this agreement*." (Doc. No. 1-1 at 1 (emphasis added).) Although towing the Vessel is the subject of both the Absolute and Universal Contracts, the plain language of the arbitration clause of the Absolute Contract does not embrace all disputes arising out of towing the Vessel. *See Texaco, Inc. v. Am. Trading Transp. Co., Inc.*, 644 F.2d 1152, 1154 (5th Cir. 1981) ("The Charter could have provided for arbitration of all disputes between the parties involving the chartered vessel. Instead the parties chose the more restrictive language limiting arbitration to disputes . . . arising out of the Charter.").[2]

---

[2] The Eleventh Circuit Court of Appeals adopted as binding precedent all prior decisions of the former Fifth Circuit Court of Appeals issued prior to October 1, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

The facts alleged in the Complaint concern the towing of the Vessel by Defendants pursuant to the Universal Contract, not the Absolute Contract. (Doc. No. 1 ¶¶ 25, 34, 37, 46.) Therefore, the factual allegations in this case do not concern the performance of duties "rising out of" the Absolute Contract. *Telecom Italia*, 248 F.3d at 1116.

In summary, because Defendants have failed to show that they are third party beneficiaries to the Absolute Contract and that the arbitration clause of the Absolute Contract embraces the claims at issue here, the Court will not compel arbitration or stay the proceedings.

## Conclusion

Based on the foregoing, it is **ORDERED** and **ADJUDGED** that the Motion to Compel Arbitration and Stay Proceedings by Defendants Universal Strategic Management, Inc. and Jess Cooley (Doc. No. 13) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on January 26, 2011.

*[Signature]*

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record